## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                           No.16-cr-2367 WJ

JULIO CESAR FIGUEROA-RIVERA,

      Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART and DENYING IN PART GOVERNMENT'S MOTIONS IN LIMINE (DOCS. 58 AND 62) and SUPPLEMENTAL RULING ON GOVERNMENT'S MOTION IN LIMINE (DOC. 57)

THIS MATTER comes before the Court upon the following motions filed by the Government, following a hearing:[1]

- Motion in Limine Seeking Pretrial Ruling on Excluding Hearsay Statements, filed February 16, 2017 (**Doc. 58**); and

- Motion in Limine Seeking Pretrial Ruling on Admissibility of Extra-Judicial Statements and Audio-Recorded Evidence, filed February 24, 2017 (**Doc. 62**).

- The Court also enters a supplemental ruling on conversations which the Government seeks to admit regarding its Motion in Limine Seeking Trial Ruling on Admissibility of Evidence, (**Doc. 57**).

The relevant background facts are set out in the Memorandum Opinion and Order denying Defendant's motion to suppress (Doc. 38) as well as the Government's brief (Doc. 57). This case began with a traffic stop for an improper lane change conducted by Bernalillo County Sherriff's Deputy Leonard Armijo. A canine search led to a further search that uncovered about $65,020 in U.S. currency.   Defendant is charged with Conspiracy to Commit Bulk Cash

---

[1] The Court heard from counsel on March 1, 2017 at a calendar call including this case, and also held a pretrial conference on March 6, 2017.

Smuggling in violation of 18 U.S.C. § 371, Bulk Cash Smuggling in violation of 31 U.S.C. § 5332(a)(1) and (b) and Aiding and Abetting (18 U.S.C. § 2).

I.      **Motion in Limine Seeking Pretrial Ruling on Excluding Hearsay Statements (Doc. 58)**

In this motion, the Government seeks to prohibit Defendant from introducing his prior statements or statements of co-conspirators known or unknown from Defendant's jail calls, because they are hearsay statements.  The Government contends that these statements cannot be excluded as hearsay under Fed.R.Evid 801(d)(2) because while that rule exempts statements made by a party-opponent as hearsay statements, the statements at issue here are self-serving statements which do not come under that rule.  The Court finds that the relevant case law supports the Government's position, and Defendant offers no reason to veer from precedent.  *See United States v. Larsen*, 175 F. App'x 236, 241 (10th Cir. 2006) (Rule 801(d)(2), which excludes from the definition of hearsay admissions by a party-opponent, does not apply because that rule does not permit self-serving, exculpatory statements made by a party and offered by that same party); *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination").

Therefore, the Government's motion (**Doc. 58**) shall be **GRANTED**.

II.     **Motion in Limine Seeking Pretrial Ruling on Admissibility of Extra-Judicial Statements and Audio-Recorded Evidence (Doc. 62) and Motion in Limine Seeking Ruling on Admissibility of Evidence (Doc. 57).**

The Court addresses these two motions together, since they dovetail into each other. In connection with these motions, the Government filed Notices of Intent to Offer Extra-Judicial Statements and Audio Recorded Evidence as part of the motions in limine.

The Court recently entered a Memorandum Opinion and Order granting in part and denying in part the Government's request to admit an entire recorded jail call, namely jail call 10.91.1.21-c369e140a5b00151623a187172144fb.  *See* Doc. 80.  In that Order, the Court ruled that only statements made by Defendant from six conversations from that jail call would be admitted under both Fed.R.Evid. 801(d)(2)(A) as admissions of a party opponent and also under Fed.R.Evid. 803(3) to show Defendant's then-existing state of mind.

Regarding Motion in Limine Docket 57, the Government requests that in addition to the statements made by Defendant in the six recorded jail conversations, that the Court also admit the "other half" of statements made by the individual on the other end of that call.  At the March 6, 2017 hearing, the Government submitted five (5) exhibits, each exhibit consisting of a particular conversation between Defendant and two other individuals, "Manuel" and "Matias."  These exhibits are attached to this Memorandum Opinion and Order for ease of reference, and they represent the sum total of the jail call conversations which the Government seeks to admit.

A.    Exhibits 3 and 5

In Motion in Limine Docket 62, the Government seeks to introduce a specific portion of Defendant's conversation from jail call 10.92.0.21-2f052a7a0a5c00156a2361b0c0a35860 at Counter 2.17.  However, this portion of the jail call is *also* Gov't Ex. 5, which is attached hereto. For this reason, the Government's Motion in Limine Docket 62 will not be separately considered since it is subsumed in the discussion below.

At the hearing, the Court addressed these conversations, which include statements made by Manuel and Matias, as well as Defendant.  Exhibit 5 refers to Defendant's statement about taking "discovery" back to Mexico."  The Court ruled that the statements in Exhibit 5 will be excluded. The concept of discovery in the legal process is not commonly understood by the

3

layperson and the probative value of this evidence would be substantially outweighed by the danger of juror confusion.

In Exhibit 3, Defendant states that he was "guilty for the 75" (meaning $75,000) and "not for the sixty-five," creating an inference, according to Defendant, that law enforcement officers took $10,000.   The Government seeks admission of this statement under Fed.R.Evid. 803(d)(2)(A) (statement by party opponent), and the Court finds the admission to be proper under this rule.  Defense counsel wishes to introduce additional evidence for context.   Doc. 57-2 at 13-14.  This evidence consists of statements made by Defendant admitting that he stated that he was "guilty for the seventy-five" because another jail mate had admitted to having more drugs than were found on him and that his case had been dropped because his admission suggested that the officers had taken some of the drugs.  The Government has no particular opposition to admission of this evidence, except to point out that it could be very confusing to the jury, and possibly undermine the jury's purpose by causing them to consider a charge in another case which they know nothing about.  In addition, such evidence could send a message to the jury that the legal system does not work.  The Court will decide at trial whether this additional "contextual" evidence will be admitted.

B.    Exhibits 1, 2 and 4

The Government seeks to admit Exhibits 1, 2 and 4 under Fed.R.Evid. 801(d)(2)(E) as co-conspirator statements.  Before deciding whether these co-conspirators statements qualify as non-hearsay pursuant to Fed.R.Evid. 801(d)(2)(E), the Court must conduct a separate three-part inquiry under this Rule to determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy. *U.S. v. Owens*, 70

F.3d 1118, 1123-24 (10th Cir. 1995) (quoting *U.S. v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)) (quoting *U.S. v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990)).   The district court may make these factual determinations using either of two procedures: (1) It may hold a *James* hearing outside the presence of the jury to determine whether the predicate conspiracy existed,[2] or (2) it may provisionally admit the evidence with the caveat that the evidence must "connect up" during trial, i.e., that the party offering the evidence must prove the existence of the predicate conspiracy through trial testimony or other evidence. *Urena*, 27 F.3d at 1491. The former procedure is "strongly preferred" in this Circuit.  *Id.*; *Owens*, 70 F.3d at 1123; *U.S. v. Gonzalez- Montoya*, 161 F.3d 643, 648 (10th Cir. 1998) ("[W]e take this opportunity to reiterate our strong preference for *James* proceedings where the government relies on coconspirator statements."); *but see U.S. v. Williamson,* 53 F.3d 1500, 1518 (10th Cir. 1995) (noting that district court "exercised its discretion and elected not to conduct a *James* hearing prior to trial). In this case, the Court finds that the hearing held on March 6, 2017 on the Government's evidentiary motions will suffice as *James* hearings.  The Court notes that counsel for the United States and counsel for Defendant agree that the March 6, 2017 hearing suffices as a *James* Hearing and the Court finds that an additional hearing would not offer any more testimony or evidence that has already been presented to the Court and the parties.

### 1.    Independent Evidence

The Confrontation Clause does not require a court to embark on an "independent inquiry" into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)) because there is a "long tradition" of co-conspirator's out-of-court statements "being outside the compass of the general hearsay exclusion." *Bourjaily v. U.S.*, 483 U.S. 171, 184 (1987).  In fact, a district court may consider the proffered hearsay statements in determining the existence of a conspiracy

---

[2] *See United States v. James*, 590 F.2d 575 (5th Cir. 1979).

and defendant's participation in it.  *Id.* at 178.  However, under Tenth Circuit precedent, the Government must produce some "independent evidence linking the defendant to the conspiracy." *U.S. v. Martinez,* 825 F.2d 1451, 1453 (10th Cir. 1987) ("independent evidence" is "evidence other than the proffered [coconspirator]statements themselves"); *U.S. v. Busch,* 758 F.2d 1394, 1397 (10th Cir. 1985) ("The general rule is that the utterances and acts of one conspirator are admissible against a co-conspirator, even though the latter was not present at the time of the act or utterances, *if* there be evidence, independent of the utterances or acts themselves, which shows the existence of a conspiracy") (emphasis in the original).  Such evidence need not be "substantial" to be sufficient." *U.S. v. Rascon,* 8 F.3d 1537, 1541 (10th Cir. 1993).  For example, a co-conspirator's testimony regarding "direct observations and contacts with defendant" qualified as independent evidence.  *U.S. v. Hernandez,* 829 F.2cd 988, 995 (10th Cir. 1987).

The Government has tendered sufficient evidence and testimony presented at the motion to suppress as independent evidence to be considered by the Court in its Rule 801(d)(2)(E) analysis.  *See* Doc. 34 (Clerk's Min.) and Doc. 38 (Mem. Opin. & Order denying motion to suppress).  In terms of "independent evidence," the Government has pointed to the cash found in Defendant's vehicle, Defendant's statement that he was headed to Mexico when he was stopped and the testimony of Deputy Armijo from the suppression hearing which was found to be credible, *see* Doc. 38 at 11.

In determining whether Rule 801(d)(2)(E) factors are satisfied, the Court may consider the statements themselves.  *Bourjaily v. U.S.,* 483 U.S. at 178.

### 2.    *Exhibit 1*

Exhibit 1 is the first conversation the Government seeks to admit.  It is a short conversation showing the Defendant asking Matias to call a certain telephone number for him.

At the March 6, 2017 hearing, Special Agent Dindinger testified that it was a phone number located in Chihuahua, Mexico.  Because Defendant lives in Mexico, defense counsel argues that Defendant is merely calling home.  However, the fact that Defendant is asking someone else to make the phone call suggests that he knows that jail calls are recorded, and suggests that he is not merely calling home.  A jury could infer that it is more likely than not that Defendant is calling to Mexico for reasons that he does not want overheard.

   *3.*  *Exhibit 2*

   Government's Exhibit 2 is over three pages of a conversation between Defendant and Manuel.[3]  Manuel states to Defendant that he has a "problem" and needs his help to pay money to Manuel's "brother-in-law."  Manuel tells Defendant that "they already came to the house and . . . and they already know where I live."  Another "brother-in-law" who has a black truck, referred to as "R," has been threatening to take Manuel's car from him.  Manuel explains that he can't "get ["R"] off my back!" and that everyday "[h]e's bugging me, bro."  Defendant asks Manuel what "R" wants, and Manuel explains that he wants him to "pay him back . . . what he's owed." Manuel had to change his cell number in order to avoid being hassled by "R."

   Manuel tells Defendant that "R" is "making a big deal, bro" and that "[he] wanted to go and collect from Vale, and I had to stop him right there."  Manuel told Defendant that he explained to "R" that "the debts are with us" and that Defendant's family "didn't have anything to do with it." Defendant tells Manuel to tell the "brother-in-law" to wait until he's "out" and that "as soon as he's out, that's . . . first thing he's going to do."

   Defense counsel contends that this conversation merely shows that Defendant owes money to his brother-in-law, a family member who expects a debt to be paid.  Counsel also

---

[3] The Court provides a few pertinent examples of the statements from Exhibit 2 rather than incorporating the entire three pages of conversation, but these examples are sufficient to support the Court's findings.

argues that these statements do not necessarily describe a conspiracy, even if Defendant was a mule who was caught while trying to bring money into Mexico.  However, the preponderance standard is not a difficult one to meet, and a jury could infer that this was a conspiracy to smuggle cash into Mexico rather than a family debt, based on the threats described in this conversations and the assurances that Defendant's family was not involved.  Also, the fact that Manuel had to change his phone number suggests by a preponderance that someone *other* than a family member was insisting on getting the debt paid; and a family member would already know where another family member lived.  In addition to these statements allowing the inference that a conspiracy existed, the statements regarding "waiting" until Defendant "got out" can allow a jury to infer that the conspiracy is ongoing and that the statements were made in the course of, and in the furtherance of, the conspiracy.

Defense counsel contends that the statements cannot have been made to further the conspiracy because the conspiracy ended when Defendant was arrested and the money was confiscated.  However, as the Government points out, should Defendant be acquitted, the money (unlike confiscated drugs) would be returned to him, and he could very well continue on his way to Mexico and complete the object of the conspiracy.  The relevant law does not require there to be an uninterrupted chain of events in order to support a finding that statements were made "in the course of" or "in furtherance of" a conspiracy.  Defendant's arrest and incarceration in itself does not necessarily end the conspiracy, nor does incarceration prevent someone from directing the commission of crimes from the inside of a prison.  The purpose of the alleged conspiracy is to smuggle bulk case into Mexico so, based on a preponderance of the evidence, the statements in Government's Exhibit 2 could infer that the conspiracy to smuggle the $65,000 is not over and that Defendant would see it through once he was "out."

Defense counsel also argues that an acquittal of Defendant means there never was a conspiracy. This contention is not legally supportable. An acquittal or not guilty verdict means only that the Government did not meet its burden in proving that Defendant was guilty of the charges.

Therefore, the statements in Exhibit 2 shows by a preponderance of the evidence that a conspiracy existed and that they were made in the course of, and in furtherance of, the conspiracy for purposes of Rule 801(d)(2)(E).

> 3. *Exhibit 4*

The statements in Government's Exhibit make up less than one page. Manuel continues to describe to Defendant the "struggling" he's been experiencing ("I've been paying one hundred percent for all the events and everything. By myself, struggling, but I keep moving forward"). A jury could infer from this that Manuel has been taking the brunt of the displeasure from those individuals who were not happy when the money never made it to Mexico. Defendant also tells Manuel that he's "going to tell Mata to call him to, to tell him to, to stop that bullshit, to tell him that I left you in charge."

Both Defendant and the person on the other end of the phone call are probably aware that the calls are recorded, and the oblique references contained in these statements (and in the statements in the other conversations) must be considered in that context. Nevertheless, these statements show that it is more likely than not, that Manuel is taking the heat for the money not arriving in Mexico with Defendant, and that Defendant is trying to assure Manuel that he will tell one of the individuals bothering Manuel to "stop that bullshit" because he left Manuel "in charge." Again, these statements could support an inference that a conspiracy existed to smuggle cash into Mexico.

C.    <u>Members of a Conspiracy.</u>

Based on the Court's findings above, the Government has met the required preponderance standard with Exhibits 1, 2 and 4, in showing that a conspiracy existed and that the statements were made in the course of, and in furtherance of, the conspiracy. However, there is another factor that must be satisfied: that the declarant and the Defendant were both members of the conspiracy.  At the March 6, 2017 hearing, counsel for the Government argued that Rule 801(d)(2)(E) does not require that Manuel or Matias—the other individuals in the conversation with Defendant—be co-conspirators, citing to *U.S. v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) for support.  Counsel is correct that Rule 801(d)(2)(E), and the case law interpreting it, do not require that the statement in question "be made by a coconspirator *to a coconspirator*." *Id.* (emphasis added).  In *Williamson,* the Government was not trying to admit the statements of a government informant *to whom* the defendant made the statements, but was trying to admit statements *made by* a co-conspirator of the defendant, who was the declarant in the conversations. The Tenth Circuit Court of Appeals held that: "the fact that one party to a conversation is a government agent or informer does not of itself preclude the admission of statements by the other party—if he or she is a member of a conspiracy—under Rule 801(d)(2)(E)."

*Williamson* stated that Rule 801(d)(2)(E) still requires that the *declarant* and the defendant (*i.e.,* the coconspirator on trial against whom the statement is being offered) be members of the conspiracy.   *Id.* Thus, while the person *to whom* the statements were made need not be found to be a co-conspirator, the person who *made* the statements (the *declarant*) still must be a co-conspirator in order to get those statements admitted under Rule 801(d)(2)(E). This

means that in order for statements made by Manuel (or Matias) to be excluded from hearsay under that rule, he must be found to be a co-conspirator.[4]

The Court allowed the parties to submit supplemental briefs on this issue.  In its supplemental brief (Doc. 92), the Government argues the Court can determine by a preponderance of the evidence that Manuel is a member of the conspiracy to smuggle bulk cash, though the Government admits it does not know who Manuel is.[5]  Regarding the requirement that the Government must present independent evidence linking the co-conspirator to the conspiracy, the Government argues the independent evidence consists of the cash, the car, and the hidden compartment under the car.  The Government states that the existence of these items and the way in which Manuel and Defendant reference them in their jail calls indicate they are objects, means, and products of the conspiracy.  For example, Manuel knows about the car and references the car in his statements to Defendant.  The Government also states there seems to be more than one car used in the course of their dealings.[6]

The Court finds that the cash, the car, and the hidden compartment under the car constitute sufficient independent evidence when considered with Manuel's statements to infer that Manuel was a member of the alleged conspiracy.  More specifically, in Exhibit 2 Manuel told the Defendant that he (Manuel) had stated to "R" that "…the debts are with us…." Ex. 2,

---

[4] Defendant's own statements would, of course, not be affected by whether or not Manuel or Matias were co-conspirators, since his statements would be admissible under Fed.R.Evid. 801(d)(2)(A).  *See* Doc. 80 (Mem. Opinion & Order).

[5] In its supplemental brief, the Government did not present any argument with regards to Matias' statements. Therefore, the Court does not admit Matias' statements as there has been no showing Matias was part of the alleged conspiracy.   In denying the Government's request to admit Matias' statements, such denial is without prejudice to the Government renewing its request at the time of trial.

[6] The Government has also presented a lengthy argument in its supplemental brief (Doc. 92, at 6–11) under the third prong: that Manuel's statements were made in the course of and in furtherance of the alleged conspiracy.  *See Owens*, 70 F.3d at 1123–24.  However, the Court already determined the statements were made in this capacity, and did not order supplemental briefing on this issue.  Rather, the Court announced during the telephonic conference that the supplemental briefing was to be limited to the second prong of whether such statements may be admitted. Therefore, the Court has not considered the Government's arguments regarding the third prong for the purposes of this Memorandum Opinion and Order.

p.3.  The logical inference from Manuel's statement is that he and the Defendant jointly owe "R"

the debt, that is the $65,000 cash seized by law enforcement from the vehicle Defendant was

driving.

In *Owens*, the Tenth Circuit held that "a coconspirator's testimony regarding 'direct

observations and contacts with defendant' qualifies as independent evidence."  *Owens*, 70 F.3d at

1125 (quoting *Martinez*, 825 F.2d 1451.  The Tenth Circuit has also held that the "independent

evidence need only establish a combination between the declarant and the defendant."  *Martinez*,

825 F.2d at 1453. In this case, the independent evidence constitutes the car, the cash, and the

secret compartment underneath the car as well as Manuel's testimony referencing the car and the

debt.   As in *Martinez*, the independent evidence here shows a "combination" between Manuel

and Defendant.  *Martinez*, 825 F.2d at 1453; *See also Bourjaily*, 483 U.S. at 180–81 (Court

allowed  consideration  of  both  independent  evidence  *and*  co-conspirator's  statements

themselves).  The Court is satisfied that the Government has met its burden to show, by a mere

preponderance of the evidence, that Manuel and Defendant conspired to smuggle bulk cash,

which is primarily shown by the car and its contents in addition to Manuel's statements about the

car  and  the  debt  as  a  result  of  law  enforcement  seizing  the  $65,000.   Therefore,  Manuel's

statements are not hearsay and will be admitted under Rule 801(d)(2)(E).

### CONCLUSION

The Government has not presented the Court with any evidence that Matias is a member

of the alleged conspiracy, so his statements cannot be admitted under Rule 801(d)(2)(E).  The

Government's motion (**Doc. 62**) is therefore **DENIED IN PART** in that the statements of Matias

in Government's Exhibit 1 shall not be admitted at trial, although the Court will allow the

Government to renew its request to admit Matias' statements at trial outside the presence of the

jury.  However, the Government has established sufficient independent evidence that Manuel is a member of the alleged conspiracy, so the motion (**Doc. 62**) is **GRANTED IN PART** in that Manuel's statements in Government Exhibits 2 and 4 shall be admitted.

Furthermore, the Government's motion (**Doc. 58**) is **GRANTED** because the proffered statements are not hearsay under Rule 801(d)(2).

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE